# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

STUDENTS AGAINST ANTISEMITISM, INC., STANDWITHUS CENTER FOR LEGAL JUSTICE, MILES RUBIN, DANIELLA SYMONDS, ERIN MCNULTY, NOAH MILLER, VALERIE GERSTEIN, KATIANA ARYEH, LAURA BELLOWS, LEMONY DAVID, JOHN DOE, CHAYA DROZNIK, LEO ELKINS, SAMUEL FRIEDMAN, MAYA GAL, AYELET GLASER, MICHAEL GROSS, JARED HARNICK, GABRIEL KAHANE, TALIA KESSELMAN, ELI MIZRAHI-AKS, OMER NAUER, AMIEL NELSON, GABRIEL NELSON, MOLLY NELSON, MARC NOCK, AVA QUINN, TALIA RABBAN, JANE ROE, SOPHIE RUKEYSER, ALIZA RUTTENBERG, EMILY SANDLER, ANDREW STEIN, JONATHAN SWILL, RAFAEL VANUNO, XAVIER WESTERGAARD, EDEN YADEGAR, and LILY ZUCKERMAN,

*Plaintiffs*,

v.

THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, and TRUSTEES OF BARNARD COLLEGE,

*Defendants*.

No. 1:24-cv-01306-VSB-SN

**ORAL ARGUMENT REQUESTED**

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Kaplan Martin LLP
156 West 56th Street, Suite 207
New York, NY 10019
(212) 316-9500

Hecker Fink LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883

September 11, 2024

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 3

    I.    Plaintiffs Fail to State a Claim Under Title VI ......................................................... 3

        A.    Plaintiffs Cannot Show that Columbia's Response Was Clearly Unreasonable in Light of the Known Circumstances ..................................... 3

        B.    Plaintiffs Fail to Plead that Columbia Engaged in Discrimination ............... 13

    II.    Plaintiffs Fail to State a Claim Under 42 U.S.C. § 1986 ........................................ 13

    III.    The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' State-Law Claims, Which Fail in Any Event ......................................... 15

    IV.    Plaintiffs' Suit Is Largely Nonjusticiable and Seeks Improper Relief ..................... 19

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Abadi v. Am. Airlines, Inc.*,
No. 23 Civ. 4033, 2024 WL 1346437 (S.D.N.Y. Mar. 29, 2024) ...................................... 14

*Bailey v. N.Y. L. Sch.*,
No. 16 Civ. 4283, 2017 WL 835190 (S.D.N.Y. Mar. 1, 2017) .......................................... 18

*Bailey v. N.Y. L. Sch.*,
No. 19 Civ. 3473, 2021 WL 5500078 (2d Cir. Nov. 24, 2021) .......................................... 4

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993).......................................................................................................... 14

*Carabello v. N.Y.C. Dep't of Educ.*,
928 F. Supp. 2d 627 (E.D.N.Y. 2013) ................................................................................ 9

*In re Columbia Tuition Refund Action*,
523 F. Supp. 3d 414 (S.D.N.Y. 2021)............................................................................... 16

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999)................................................................................................... *passim*

*Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*,
810 F.3d 861 (2d Cir. 2015)............................................................................................. 17

*Do No Harm v. Pfizer Inc.*,
646 F. Supp. 3d 490 (S.D.N.Y. 2022)............................................................................... 19

*Do No Harm v. Pfizer Inc.*,
96 F.4th 106 (2d Cir. 2024) ............................................................................................. 19

*Doe v. Sacks*,
— F. Supp. 3d —, No. 23 Civ. 1307, 2024 WL 402945
(S.D.N.Y. Feb. 2, 2024)......................................................................................... 5, 9, 20

*Doe v. Trs. of Columbia Univ. in City of N.Y.*,
No. 21 Civ. 5839, 2023 WL 4211031 (S.D.N.Y. June 27, 2023)....................................... 4

*Doe v. Trs. of Columbia Univ. in City of N.Y.*,
No. 23-960, 2024 WL 2013717 (2d Cir. May 7, 2024)...................................................... 4

*Doe v. Yeshiva Univ.*,
703 F. Supp. 3d 473 (S.D.N.Y. 2023)............................................................................... 18

*DT v. Somers Cent. Sch. Dist.*,
    348 F. App'x 697 (2d Cir. 2009) ................................................................. 13

*Dube v. State Univ. of N.Y.*,
    900 F.2d 587 (2d Cir. 1990) ...................................................................... 6

*Eiseman v. State*,
    70 N.Y.2d 175 (1987) ............................................................................... 19

*Feibleman v. Trs. of Columbia Univ. in City of N.Y.*,
    No. 19 Civ. 4327, 2020 WL 3871075 (S.D.N.Y. July 9, 2020) ...................... 4, 5

*Feminist Majority Foundation v. Hurley*,
    911 F.3d 674 (4th Cir. 2018) ..................................................................... 6

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ...................................................................... 18

*Frankel v. Regents of University of California*,
    — F. Supp. 3d —, 2024 WL 3811250 (C.D. Cal. Aug. 13, 2024) .................... 10

*Frasco v. Mastic Beach Prop. Owners' Ass'n*,
    No. 12 Civ. 2756, 2014 WL 3735870 (E.D.N.Y. July 29, 2014) ..................... 15

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998) ........................................................... 16

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ................................................................................. 9

*Gomez-Jimenez v. N.Y. L. Sch.*,
    103 A.D.3d 13 (1st Dep't 2012) ................................................................. 18

*Hall v. Warren*,
    No. 21 Civ. 6296, 2022 WL 2356700 (W.D.N.Y. June 30, 2022) .................... 19

*Healy v. James*,
    408 U.S. 169 (1972) ................................................................................. 4

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*,
    37 N.Y.3d 169 (2021) ............................................................................... 18

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ................................................................................. 19

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
  29 F.4th 118 (2d Cir. 2022) ................................................................. 17

*Kestenbaum v. President & Fellows of Harvard Coll.*,
  — F. Supp. 3d —, No. 24 Civ. 10092, 2024 WL 3658793
  (D. Mass. Aug. 6, 2024) .................................................... 11, 12, 13, 17

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013) ................................................................. 16

*Morpurgo v. Incorporated Village of Sag Harbor*,
  697 F. Supp. 2d 309 (E.D.N.Y. 2010) .................................................. 14

*Morpurgo v. Incorporated Village of Sag Harbor*,
  417 F. App'x 96 (2d Cir. 2011) ............................................................ 14

*Murillo-Roman v. Pension Bds. – United Church of Christ*,
  22 Civ. 8365, 2024 WL 246018 (S.D.N.Y. Jan. 23, 2024) .................... 16

*Nallan v. Helmsley-Spear, Inc.*,
  50 N.Y.2d 507 (1980) .......................................................................... 18

*Novio v. N.Y. Acad. of Art*,
  317 F. Supp. 3d 803 (S.D.N.Y. 2018) .................................................. 16

*Nungesser v. Columbia Univ.*,
  244 F. Supp. 3d 345 (S.D.N.Y. 2017) .............................................. 5, 17

*Peters v. Molloy Coll. of Rockville Centre*,
  No. 07 Civ. 2553, 2008 WL 2704920 (E.D.N.Y. July 8, 2008) ............ 17

*Romero v. City of New York*,
  839 F. Supp. 2d 588 (E.D.N.Y. 2012) .................................................... 4

*Rothbein v. City of New York*,
  No. 18 Civ. 5106, 2019 WL 977878 (S.D.N.Y. Feb. 28, 2019) ........... 16

*Shain v. Ellison*,
  356 F.3d 211 (2d Cir. 2004) ................................................................. 20

*Sirohi v. Lee*,
  222 A.D.2d 222 (1st Dep't 1995) ......................................................... 16

*Sonoiki v. Harvard Univ.*,
  37 F.4th 691 (1st Cir. 2022) ................................................................. 17

*StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*,
— F. Supp. 3d —, No. 24 Civ. 10577, 2024 WL 3596916
(D. Mass. July 30, 2024) .................................................................. 3, 11, 12, 14

*T.E. v. Pine Bush Central School District*,
58 F. Supp. 3d 332 (S.D.N.Y. 2014) ............................................................ 10, 11

*United States v. Santos*,
553 U.S. 507 (2008) ................................................................................. 5

*Urbina v. City of New York*,
No. 14 Civ. 9870, 2016 WL 79991 (S.D.N.Y. Jan. 6, 2016) .............................. 15

*Vega v. Miller*,
273 F.3d 460 (2d Cir. 2001) ........................................................................ 6

*Ward v. N.Y. Univ.*,
No. 99 Civ. 8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) ....................... 16

*Warth v. Seldin*,
495 F.2d 1187 (2d Cir. 1974) ...................................................................... 19

*Warth v. Seldin*,
422 U.S. 490 (1975) ................................................................................. 19

*Williams v. City of New York*,
No. 16 Civ. 8193, 2018 WL 4308552 (S.D.N.Y. Sept. 10, 2018) ....................... 14

*Williams v. Town of Greenburgh*,
535 F.3d 71 (2d Cir. 2008) ......................................................................... 15

*Young America's Foundation v. Stenger*,
No. 20 Civ. 822, 2023 WL 3559619 (N.D.N.Y. May 19, 2023) ......................... 20

*Zeno v. Pine Plains Central School District*,
702 F.3d 655 (2d Cir. 2012) ............................................................... *passim*

**Statutes**

42 U.S.C. § 1981 .................................................................................... 19

42 U.S.C. § 1982 .................................................................................... 19

42 U.S.C. § 1983 .................................................................................... 19

42 U.S.C. § 1986 ........................................................................ 13, 14, 15, 19

42 U.S.C. § 2000d.......................................................................................................... 10

N.Y. Civil Rights Law § 40-c ....................................................................................... 15

N.Y. Exec. Law § 296 ................................................................................................... 15

N.Y. General Business Law § 349................................................................................. 17

N.Y. General Business Law § 350................................................................................. 17

N.Y.C. Admin. Code § 8-107 ....................................................................................... 16

**Federal Rules**

Fed. R. Civ. P. 12.............................................................................................................. 1

## PRELIMINARY STATEMENT

Columbia does not dispute that it has confronted an unprecedented wave of intense student activism and student-versus-student conflict since the October 7 terrorist attacks by Hamas. While Columbia was not the cause of this activity, Title VI required Columbia to respond to it in a "manner that [was] not clearly unreasonable." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 459 (1999). Although hindsight may provide valuable insight into how Columbia could have responded differently, hindsight is not the applicable legal standard, and there can be no doubt that Columbia met its legal obligations to respond to the circumstances at hand. This motion largely boils down to this question about timing—does the Court evaluate Columbia's actions with the benefit of hindsight, or at the time they were taken? Precedent, recognizing that hindsight is always 20/20, makes clear that the correct answer is the latter. Accordingly, this case should be dismissed.

More specifically, although Plaintiffs deride Columbia's response to recent campus antisemitism as both "empty" and "hollow," *see, e.g.*, Opp. 2, 4, 7, 12, 26-27, 31,[1] that cannot be squared with the measures Columbia actually took this past academic year, which included, as Plaintiffs concede, repeatedly speaking out against specific forms of discrimination and in support of affected students, ¶¶ 146, 154, 156, 297, 374-75, 382-83; boosting public safety measures to protect students, ¶¶ 168, 189, 259, 275, 306; overhauling policies to restrict events that might foster harassment, ¶¶ 88, 90; providing students with health, safety, and educational resources and

---

[1] All abbreviations and citations to "¶ _" and "Ex. _" retain their meanings from Columbia's memorandum of law ("Br."), ECF 61, and Plaintiffs' opposition ("Opp."), ECF 72. The Court may consider non-incorporated, judicially noticeable exhibits on this Rule 12(b)(6) motion only to establish those statements' "existence," and "not for the truth of the facts asserted therein." Opp. 14 n.5. Although Columbia's Rule 12(b)(6) motion does not rely on any such exhibits, *see* Br. 3 n.2, many of those exhibits contain full-throated condemnations of antisemitism and/or strong statements of support for Jewish and Israeli students, *see* Exs. M, P, S, T, CC, II, which undercut Plaintiffs' charge of deliberate indifference. Furthermore, Plaintiffs do not appear to disagree that the Court may consider Exhibits M, P, S, T, and CC in full because they are "fairly implicated" but selectively ignored by the FAC. *See* Br. 3 n.2, 23 n.19.

accommodations, ¶ 357; Ex. L at 1; establishing channels for dialogue and an active, vocal Task Force dedicated solely to the issue, ¶¶ 265, 414, 446; interim suspending several students and suspending student groups, ¶¶ 199, 324, 372; repeatedly locking down campus access in anticipation of protests, ¶¶ 168, 189, 259, 275, 306; and twice requesting police assistance to clear disruptive protest activity, ¶¶ 324, 387; *see* Br. 4-10.

Nor can Plaintiffs' assertion that Columbia was deliberately indifferent be squared with the applicable Title VI standard. Plaintiffs advance a legal theory unmoored from the deliberate indifference standard that the Supreme Court so carefully crafted in *Davis* and the Second Circuit reinforced in *Zeno v. Pine Plains Central School District*, 702 F.3d 655 (2d Cir. 2012). Plaintiffs insist that Columbia is liable because its responses to the unprecedented events of the last year were not "effective" in eliminating peer-on-peer harassment, even though the caselaw uniformly makes clear that eliminating harassment is not required. Plaintiffs similarly fault Columbia for not responding to a range of student conduct with swift, harsh, and sweeping punishments, even though, once again, they have no right to demand that Columbia take particular remedial action. Along the way, Plaintiffs ignore that Columbia administrators were so often caught between a rock and a hard place, having to navigate diametrically opposed positions in addressing campus unrest; they fault Columbia for not having taken certain measures, and then fault Columbia again for later taking exactly those same measures; and they seek to relax Title VI's "actual knowledge" and "substantial control" requirements beyond recognition, effectively asking this Court to hold Columbia strictly liable for every instance of antisemitism involving the many thousands of students and employees on its campus.

Nearly every day since October 7, 2023, Columbia administrators have faced excruciatingly difficult decisions about how best to protect student safety and combat

discriminatory conduct, while balancing considerations of educational opportunity, freedom of expression and academic inquiry, the risk of error, and the possibility of counterproductive backlash. Plaintiffs no doubt believe that the sum total of these decisions has proven "too lax," while those on the other side of this debate contend it has been "too strict." *Davis*, 526 U.S. at 682 (Kennedy, J., dissenting). However, all nine Justices in *Davis* agreed that such post hoc "second-guessing" does not give rise to Title VI liability. *Id.* at 648 (opinion of the Court).

## ARGUMENT

### I.     Plaintiffs Fail to State a Claim Under Title VI

### A.     Plaintiffs Cannot Show that Columbia's Response Was Clearly Unreasonable in Light of the Known Circumstances

Plaintiffs have now laid bare their remarkable interpretation of the dictates of Title VI: Columbia is liable because it did not eliminate all antisemitic and anti-Israeli harassment committed by Plaintiffs' fellow students and others on campus. *See, e.g.*, Opp. 9, 13, 23-25, 30 (repeatedly asserting that Columbia's response was not "effective" in actually stopping all alleged harassment). The only way Columbia could have possibly satisfied Title VI, in Plaintiffs' view, was if it had imposed discipline against more individuals, faster, and with harsher punishments. *See, e.g.*, Opp. 4, 6, 8, 10-13, 20, 23, 24 n.22, 26-28 & n.26, 31, 34 n.31, 36, 48, 51-52, 74-75; FAC, Prayer for Relief, at A; ¶¶ 1, 3, 100, 104, 112, 122, 164, 170, 194-95, 199-200, 238, 258, 263, 292, 296, 315, 405, 418-19, 427, 429, 431-32, 618, 633, 691, 699, 725-26.

But the law is clear that Columbia was not required to "purg[e]" its campus of "actionable peer harassment." *Davis*, 526 U.S. at 648; *accord Zeno*, 702 F.3d at 670. Indeed, whether "[i]n hindsight, one might envision things [the University] could have done differently . . . is not the applicable standard," *StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*, — F. Supp. 3d —, No. 24 Civ. 10577, 2024 WL 3596916, at *5 (D. Mass. July 30, 2024) ("*MIT*"), since "*actually*

eliminating harassment is not a prerequisite to an adequate response," *Zeno,* 702 F.3d at 670; *see also Feibleman v. Trs. of Columbia Univ. in City of N.Y.*, No. 19 Civ. 4327, 2020 WL 3871075, at *6 (S.D.N.Y. July 9, 2020) ("[T]he Court's role is not to determine whether Columbia *could* have proceeded more aggressively "but whether Columbia was *required* by Title IX to do so."); *Romero v. City of New York*, 839 F. Supp. 2d 588, 612 (E.D.N.Y. 2012) (rejecting deliberate indifference claim despite plaintiff's "speculat[ion] that [defendants] could have done more to prevent" harassment). All that Title VI demands is that Columbia "merely respond to known peer harassment in a manner that is not clearly unreasonable." *Davis*, 526 U.S. at 649.

Title VI is equally clear that "[v]ictims do not have a right to specific remedial measures." *Bailey v. N.Y. L. Sch.*, No. 19 Civ. 3473, 2021 WL 5500078, at *3 (2d Cir. Nov. 24, 2021) (cleaned up). A plaintiff cannot demand that school administrators "engage in particular disciplinary action." *Davis*, 526 U.S. at 648. And a plaintiff's "prefer[ence] [for] 'a different type of investigation, or a more expansive one,'" is not a basis for a deliberate indifference claim. *Doe v. Trs. of Columbia Univ. in City of N.Y.*, No. 21 Civ. 5839, 2023 WL 4211031, at *8 (S.D.N.Y. June 27, 2023), *aff'd*, No. 23-960, 2024 WL 2013717 (2d Cir. May 7, 2024).

Plaintiffs ask this Court not only to flout these core principles of deliberate indifference jurisprudence, but also to overlook the important reasons why courts have articulated them in the first place. Again, hindsight, of course, is 20/20. But university administrators responding to a shifting and volatile situation must, *in the moment*, take into account several considerations that Plaintiffs give short shrift, including "the practical realities of responding to student behavior," *Davis*, 526 U.S. at 653, and the singular role of the "college classroom with its surrounding environs" as "the 'marketplace of ideas,'" *Healy v. James*, 408 U.S. 169, 180-81 (1972).

When it comes to practical realities, there are several reasons why immediately suspending,

expelling, or requesting the arrest of a student accused of misconduct, as Plaintiffs demand here, may be infeasible or unwise. The punitive tools in a university administrator's toolkit must be used carefully: tensions can be inflamed by certain actions, to the detriment of the same students affected by the harassment; a rush to judgment increases the risk of error; and fairly conducted disciplinary proceedings involving matters related to free speech and academic freedom obviously take time. *See* Br. 24-26; *see also Feibleman*, 2020 WL 3871075, at *6. Although Plaintiffs may prefer to foist the role of university administrator onto this Court, *see* FAC, Prayer for Relief, at A, Title VI does not permit it, *e.g.*, *Zeno*, 702 F.3d at 666 ("[C]ourt[s] must accord sufficient deference to the decisions of school disciplinarians.").[2]

Indeed, Plaintiffs are wrong to deny the relevance of free speech and academic freedom in this context. *See* Opp. 35-39. Title VI, which applies to both public and private universities alike, cannot compel a private university like Columbia to take actions that would violate the First Amendment if the university were public. *See United States v. Santos*, 553 U.S. 507, 522 (2008) (meaning of statute's words cannot change with application); *cf., e.g., Sacks*, 2024 WL 402945, at *7 (dismissing case against private university in part due to "speech-protected values"); *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 371 (S.D.N.Y. 2017) (citing, in Title IX context, Columbia's "responsibility to account for students' rights to free speech and the University's own responsibility . . . to promote free speech"). That is not to say that free speech principles immunize antisemitic harassment if it "'occurs within the broader context of a political demonstration' that would otherwise consist of protected expression." Opp. 36. But the "broader context" in which

---

[2] Straining to undercut Columbia's response to this unprecedented campus climate, Plaintiffs improperly rely on material outside the FAC, citing a congressional press release characterizing certain disciplinary statuses to argue that Columbia's "threats of discipline" were "hollow." Opp. 27; *see* Ex. 5. *But see* Opp. 14 n.5 (such material cannot be considered for the truth of the matter asserted on this motion); *supra* note 1. Even if the Court considered this material, Plaintiffs' charge would be unavailing for the reasons described above. *See also* Br. 24-26. Moreover, the fact that any particular individual may have been in good standing at one moment in time does not mean that will remain the case.

harassment occurs, *id.*, is relevant to assessing a response "in light of the known circumstances," *Zeno*, 702 F.3d at 666. Severe and immediate protest crackdowns of the kind Plaintiffs seek, *see* Opp. 9-10, 24-25, come with their own risks, including the obvious risk of unknown and unintended consequences, *cf.* ¶ 589.

Moreover, the FAC frequently characterizes speech as discriminatory where it could also be interpreted as non-sanctionable criticism of Israeli government policy. By way of analogy, it is "clearly established law" in this Circuit that a professor cannot be denied tenure for teaching courses that equate "Zionism in Israel" with "Nazism in Germany" and characterize Zionism as a form of racism. *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 589, 597 (2d Cir. 1990). While Plaintiffs apparently believe that the *Dube* case is somehow distinguishable, *see* Opp. 37 n.34, if a public university cannot "discipline a college teacher for expressing" such views, *Vega v. Miller*, 273 F.3d 460, 467 (2d Cir. 2001), then a private university cannot be compelled to do so under Title VI. These are just some of the complicated and sensitive considerations that led Columbia reasonably to respond with dialogue, engagement, and the provision of resources and accommodations, in addition to discipline.[3]

Close consideration of the facts conceded in the FAC only confirms that Columbia's actions in the wake of October 7 were "not 'clearly unreasonable' as a matter of law," *Davis*, 526 U.S. at 649—and illustrates just how far off the mark Plaintiffs' unbounded theory of Title VI liability really is. Beginning almost immediately after Hamas's terror attacks, the University condemned antisemitism, restricted access to its campus to University ID holders during significant protest activity, and amended its policies to clarify sanctions for unauthorized events.

---

[3] Plaintiffs mischaracterize *Feminist Majority Foundation v. Hurley*, 911 F.3d 674 (4th Cir. 2018), as holding that a "school cannot hide behind the First Amendment in refusing to take effective action" involving "threats." Opp. 36 n.33. But that case—unlike this one—concerned violent threats directed at specific individuals, thus implicating the "true threat" exception to the First Amendment. *Hurley*, 911 F.3d at 692.

*See* ¶¶ 90, 168, 189, 259, 275, 306; Ex. G at 4-5; Br. 20, 22-23. When certain student groups repeatedly violated those policies, they were suspended. *See* ¶ 199; Br. 7 n.4. And when protestors' actions escalated, the University's response escalated in kind.

One day after the first "Gaza Solidarity Encampment" was erected on the South Lawn on April 17, 2024, ¶ 307, the University took the extraordinary step of interim suspending participating students and requesting the assistance of the NYPD to clear the encampment, explaining that it did so because the encampment "create[d] a harassing and intimidating environment for many of our students." Ex. X at 2; *see* ¶¶ 324-25; Ex. Y at 1. But that did not end the matter, as the protestors returned and formed a second encampment on April 19. ¶ 337. Rather than "doing the same thing over and over and expecting a different result," Opp. 33, the University attempted to first engage in dialogue to dismantle the second encampment, ¶¶ 363, 367, 370-71; Ex. CC.[4] Simultaneously, Columbia offered accommodations to affected community members, including by providing a remote learning option for any student who wanted one. ¶ 357; Ex. BB.

As discussions reached an impasse, far from "capitulating to the demands of harassers," Opp. 34 n.32, Columbia informed students in the encampment that they would be interim suspended and deemed trespassing if they failed to disperse, ¶¶ 372, 374; Ex. DD. And when a group of protestors responded by breaking into Hamilton Hall, within hours, the University sought NYPD assistance to clear out Hamilton Hall and the encampment. ¶¶ 377, 387-88; Exs. DD, EE. The University transitioned to remote courses for the remainder of the semester and requested a sustained police presence on campus through Commencement. ¶ 383; Ex. FF.

What this reflects is not deliberate indifference, but instead that Columbia sought to

---

[4] The University explained at the time that it engaged in these negotiations not because Jewish and Israeli students' safety was "less of a priority to Columbia," Opp. 34, but to avoid "further inflaming what is happening on campus, and drawing thousands to our doorstep who would threaten our community," Ex. CC.

develop solutions in real time that accounted for imperfect information, changing circumstances on the ground, and myriad other considerations that University administrators have to consider. When certain tactics proved insufficient to address the problem, Columbia changed its approach. That did not always work as Columbia hoped it would. But to say that it shows deliberate indifference empties those words of any meaning and fundamentally clashes with *Davis* and *Zeno*.

In insisting otherwise, Plaintiffs ask this Court to employ a "damned if you do, damned if you don't" analysis that would render it virtually impossible for Columbia to satisfy Title VI. For example, Plaintiffs argue that Columbia's request for NYPD assistance to dismantle the first encampment after just one day was deficient because the encampment "was immediately reassembled." Opp. 33. Yet they also contend that Columbia's decisions *not* to call the NYPD in the months preceding the first encampment, and then to try to negotiate briefly with the student protestors rather than immediately requesting NYPD assistance in connection with the second encampment, were clearly unreasonable, too. *See id.*; ¶¶ 5, 363, 610. Plaintiffs also perceive deliberate indifference in both the alleged denial as well as the provision of remote class options. *Compare* Opp. 34; ¶¶ 189, 224, 339, 464, 468-69, 473, 491, *with* Opp. 34; ¶¶ 357, 495, 583, 592. And they dismiss Columbia's repeated statements condemning antisemitism as "platitudes," Opp. 26, while arguing Columbia exhibited deliberate indifference by not issuing the statements quickly enough or not wording them exactly as Plaintiffs prefer, *e.g.*, ¶¶ 412, 416.

The other arguments in Plaintiffs' opposition brief are similarly unavailing. Plaintiffs first seek to relax Title VI's "actual knowledge" requirement beyond recognition, effectively asking this Court to hold Columbia strictly liable for any antisemitic incidents, regardless of whether the University specifically knew of such incidents or whether they bear any connection to any Plaintiff. *See* Opp. 15-19. Under *Davis* and *Zeno*, however, strict liability is not the correct standard. *See* Br.

15-18; *Davis*, 526 U.S. at 642, 645, 650 (rejecting "agency principles" and clarifying that a school may be liable only if it had "actual knowledge"); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998) ("constructive notice" not enough); *Zeno*, 702 F.3d at 665-66. While a plaintiff may be able to allege a *hostile environment* without specifying that the defendant had actual knowledge of every contributing incident, *see* Opp. 15-16, any evaluation of whether the University's *response* was clearly unreasonable must, consistent with *Davis* and *Zeno*, take into account what the University actually knew. Courts have thus observed that "[t]he analysis of actual knowledge is often 'inextricably intertwined' with the analysis of deliberate indifference." *Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 638 (E.D.N.Y. 2013). In assessing Columbia's response, only those allegations of which Columbia had actual knowledge may be properly considered by the Court.

Plaintiffs also misconstrue the contexts over which Columbia exercises "substantial control." *Davis*, 526 U.S. at 645. For example, Plaintiffs argue that because Columbia asks its public safety officers to concern themselves with off-campus as well as on-campus safety, *see* Ex. 4, and expects its students not to engage in social media harassment, *see* Opp. 19-20, it has assumed liability for discrimination beyond its campus—in other words, throughout New York City and anywhere on the internet. Plaintiffs similarly assert that Columbia is somehow responsible for harassment experienced by Barnard students (even though "Columbia . . . and Barnard are separate institutions," ¶ 65) because Barnard students "regularly must traverse the Columbia campus," Opp. 4 n.2. But a university does not assume liability for off-campus or online misconduct simply by holding students or employees to a certain standard. *See, e.g.*, *Sacks*, 2024 WL 402945, at *7 n.6 ("[A]nti-harassment policies themselves do not constitute proof of control over 'both the harasser and the context in which the known harassment occurs.'" (quoting *Davis*, 526 U.S. at 645)). And

9

Plaintiffs are wrong to assert (without citation) that Columbia is somehow liable to non-students—especially based on their mere "travers[al]" of campus, Opp. 4 n.2—absent any link to a specific Columbia "program or activity," 42 U.S.C. § 2000d; *see* Br. 11 n.8.

Finally, Plaintiffs lean heavily on comparisons between this case and both *Zeno* and *T.E. v. Pine Bush Central School District*, 58 F. Supp. 3d 332 (S.D.N.Y. 2014), as well as a recent out-of-circuit decision involving Harvard.[5] But *Zeno* involved an unrelenting, three-and-a-half-year campaign of daily slurs and frequent physical attacks directed at a single grade-school student. *See* 702 F.3d at 666-67 (plaintiff "call[ed] a 'n*****' nearly every day," "received explicit threats," and suffered "physical attacks"). And *Pine Bush* involved years of Holocaust "jokes" and "physical harassment, including being slapped, physically restrained, and having coins thrown" at middle schoolers and high schoolers. 58 F. Supp. 3d at 357. In both cases, the schools disciplined individual offenders, but the discipline had little effect on the harassment. *See Zeno*, 702 F.3d at 668; *Pine Bush*, 58 F. Supp. 3d at 363. The courts in these cases concluded that the schools fell short, not because the discipline turned out to be ineffective, but by "dragg[ing] [their] feet before implementing any *non*-disciplinary remedial action," *Zeno*, 702 F.3d at 669 (emphasis added), *i.e.*, measures *beyond* "the individual disciplining of offending students," *Pine Bush*, 58 F. Supp. 3d at 364. *Zeno* and *Pine Bush* illustrate that discipline is not, in fact, a silver bullet. The schools in *Zeno* and *Pine Bush* did what Plaintiffs say Columbia should have done, and the courts found them lacking for failing to do what Plaintiffs fault Columbia for doing here: not just imposing disciplinary consequences or affording accommodations, but also pursuing systemic, escalating,

---

[5] Plaintiffs also rely briefly on the preliminary injunction order in *Frankel v. Regents of University of California*, — F. Supp. 3d —, 2024 WL 3811250 (C.D. Cal. Aug. 13, 2024), a case involving UCLA. *See* Opp. 2, 47 n.44. But the court there explicitly declined to address Title VI, predicating its merits analysis exclusively on constitutional Free Exercise claims not at issue here. *See Frankel*, 2024 WL 3811250, at *6. Even assuming the case was correctly decided, Plaintiffs offer no explanation for why the strict scrutiny analysis applied in *Frankel* has any connection to the "clearly unreasonable" standard applicable here.

and institution-wide interventions to address a nationwide problem.[6]

Nor does the recent *Harvard* decision support Plaintiffs' position, particularly when juxtaposed with a recent decision by the same judge involving MIT (a decision Plaintiffs hardly mention). *See Kestenbaum v. President & Fellows of Harvard Coll.*, — F. Supp. 3d —, No. 24 Civ. 10092, 2024 WL 3658793 (D. Mass. Aug. 6, 2024) ("*Harvard*"); *MIT*, 2024 WL 3596916. The plaintiffs in *Harvard* and *MIT*, like Plaintiffs here, focused heavily on the universities' responses to protest encampments. In *MIT*, the court acknowledged that the complaint "compellingly depict[ed] a campus embroiled in an internecine conflict that caused Jewish and Israeli students great anguish," but nevertheless held that the plaintiffs' Title VI claims failed as a matter of law. 2024 WL 3596916, at *5. "Far from sitting on its hands," the court noted, "MIT took steps to contain the escalating on-campus protests," including by "suspending student protestors from non-academic activities" and "suspending one of the most undisciplined of the pro-Palestine student groups"—even though "[t]hese measures proved ineffective" at preventing the encampment outright. *Id.* at *2, 5. Once the encampment began, MIT "warned students of impending disciplinary action," but after 19 days, when its "attempt to peacefully clear the encampment proved futile, it suspended and arrested trespassing students." *Id.* On these allegations, the court concluded that "[t]o fault MIT for what proved to be a failure of clairvoyance and a perhaps too measured response to an outburst of ugliness" would be both "unhelpful" and inconsistent with Title VI. *Id.* at *5.

Instead of grappling with the *MIT* decision, Plaintiffs cite (dozens of times) the same judge's partial denial of a motion to dismiss in *Harvard*. Yet to the extent that these out-of-circuit

---

[6] It also is worthwhile to note that *Zeno* and *Pine Bush* both involved grade school students, not undergraduate or graduate students. *See Zeno*, 702 F.3d at 658-69; *Pine Bush*, 58 F. Supp. 3d at 332, 339-40, 342-50; *cf. Davis*, 526 U.S. at 649 ("A university might not, for example, be expected to exercise the same degree of control over its students that a grade school would enjoy . . . .").

decisions are instructive, Columbia's responses to antisemitism materially differed from Harvard's—and surpassed even MIT's. Like MIT, Columbia "took steps to contain the escalating on-campus protests that, in some instances, posed a genuine threat to the welfare and safety of Jewish and Israeli students," including by suspending "the most undisciplined of the pro-Palestine student groups." *MIT*, 2024 WL 3596916, at *5; *see* ¶¶ 168, 170, 199, 230, 259, 287, 292, 297. Like both MIT and Harvard, Columbia nevertheless experienced encampments in April 2024. But Columbia authorized police intervention to clear its encampment after one day and, when encampments resumed, 12 days. ¶¶ 324, 387. In contrast, MIT's encampment persisted for 19 days, *see MIT*, 2024 WL 3596916, at *2, while Harvard's "was left undisturbed" for 20, *Harvard*, 2024 WL 3658793, at *2. Harvard never sought law enforcement assistance to end its encampment; it negotiated a resolution not just by agreeing to consider certain policies relating to Israel, but also by "reinstat[ing] any student protestors who had been placed on involuntary leave" and "agree[ing] to conduct [disciplinary] hearings with 'leniency.'" *Id.* For these and other reasons, the district court deemed Harvard's responses "indecisive, vacillating, and at times internally contradictory." *Id.* at *6.[7]

Ultimately, if the *Harvard* and *MIT* decisions illustrate anything, it is that the events of October 7 sparked unrest across the country, straining community bonds in extraordinary ways. Columbia is no exception. That Harvard and MIT (among numerous other universities) experienced similar campus protests and encampments in parallel with those at Columbia underscores that the activity at the heart of Plaintiffs' allegations was symptomatic not of Columbia's alleged deliberate indifference, but of seismic global events. This context, and Columbia's serious response, renders implausible the notion that Columbia itself "effectively

---

[7] Columbia's responses prior to the encampments compare favorably in many respects with both schools as well. *Compare* Ex. 2; ¶ 87, *with MIT*, 2024 WL 3596916, at *2 & n.5; *Harvard*, 2024 WL 3658793, at *2-3.

caused the subsequent harassment . . . as is required for a claim under Title VI." *DT v. Somers Cent. Sch. Dist.*, 348 F. App'x 697, 700 (2d Cir. 2009) (quotation marks omitted). The University's efforts to turn down the temperature and ensure its students a safe educational environment—not just through reactive discipline, but also through proactive measures, initiatives, and discussions— were anything but clearly unreasonable under *Davis* and *Zeno*.[8]

### B.    Plaintiffs Fail to Plead that Columbia Engaged in Discrimination

We previously noted that while Plaintiffs "hint[ed] at a direct discrimination claim," their "precise theory of liability . . . [was] somewhat unclear." Br. 14. Plaintiffs' opposition brief provides no further clarity. Plaintiffs admit that some "adverse action" by the University itself is required for any direct discrimination claim. Opp. 41. But they allege nothing of the sort, asserting only "harm[] in numerous ways" with a bare citation to 166 consecutive paragraphs of the FAC. *Id.* Nothing in those paragraphs reveals any cognizable adverse action (such as a discriminatory "failing grade," *id.*), let alone one for each of the dozens of Plaintiffs purportedly alleging direct discrimination. Independently, Plaintiffs' shaky attempt to justify their purported comparators as "reasonable," *id.* at 40, falls flat for the reasons previously explained, *see* Br. 14; *accord Harvard*, 2024 WL 3658793, at *7. Recognizing as much, Plaintiffs insist that it is "improper" to resolve even the most tenuous claim "on a motion to dismiss," Opp. 39 n.36, even as they concede that several courts within this Circuit have done exactly that, *see id.* at 39 n.36, 40.

## II.    Plaintiffs Fail to State a Claim Under 42 U.S.C. § 1986

Plaintiffs considerably narrow the scope of their Ku Klux Klan Act claim, clarifying that this claim is predicated solely on the establishment of protest encampments in April 2024. *See id.*

---

[8] Plaintiffs also appear to argue that the relevant legal principles are inapposite because this case has several Plaintiffs rather than one. *See, e.g.*, Opp. 22 n.20, 31 n.28. Properly understood, however, Plaintiffs' decision to join their claims and seek sweeping, novel relief does not permit them to avoid the well-established deliberate indifference framework.

at 42. In doing so, however, they only exacerbate their claim's fatal deficiencies. *See* Br. 30-34.

Starting with their burden to plead an unlawful agreement to deprive them of their rights, Plaintiffs infer such an agreement among numerous student groups and untold others based on social media posts promoting the encampments "for Gaza," the presence of "camping gear," "fundraising efforts," and the fact that students participated in unsuccessful negotiations to disband the encampment. Opp. 42-44. These allegations are plainly insufficient to plausibly suggest that "each member ha[d] knowledge of the *nature and scope* of the agreement," *Morpurgo v. Incorporated Village of Sag Harbor*, 697 F. Supp. 2d 309, 339 (E.D.N.Y. 2010) (emphasis added), *aff'd*, 417 F. App'x 96 (2d Cir. 2011), particularly given the sheer volume of alleged co-conspirators, *see Abadi v. Am. Airlines, Inc.*, No. 23 Civ. 4033, 2024 WL 1346437, at *26 (S.D.N.Y. Mar. 29, 2024). Plaintiffs purport to identify "direct evidence" of the conspiracy in an Instagram post promoting the first encampment. Opp. 42; *see* ¶ 309. Yet if such evidence sufficed to satisfy the "heightened pleading standard" on this element, *Williams v. City of New York*, No. 16 Civ. 8193, 2018 WL 4308552, at *9 (S.D.N.Y. Sept. 10, 2018) (Broderick, J.), it is difficult to imagine any student group event that would fall short. Indeed, when the *MIT* plaintiffs brought a § 1986 claim grounded in analogous allegations, the court easily held that they "fail[ed] to plead any conspiratorial agreement." 2024 WL 3596916, at *6.

Plaintiffs likewise fail to show that the "conscious objective" of any purported agreement was to deprive them of a protected right. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275 (1993). Plaintiffs now premise their claim on the right to intrastate travel. Opp. 44. But a conspiracy, however noxious, "is not 'for the purpose' of denying" a protected right "simply because it has an effect upon" that right. *Bray*, 506 U.S. at 275; *cf. MIT*, 2024 WL 3596916, at *6. What's more, because the right to travel "protects *movement between places* and has no bearing

14

on *access* to a particular place," "[i]t would distort the right . . . beyond recognition to construe" it, as Plaintiffs do here, as "providing a substantive right to cross a *particular* parcel of land, enter a *chosen* dwelling, or gain admittance to a *specific*" building. *Frasco v. Mastic Beach Prop. Owners' Ass'n*, No. 12 Civ. 2756, 2014 WL 3735870, at *6 n.10 (E.D.N.Y. July 29, 2014) (quoting *Williams v. Town of Greenburgh*, 535 F.3d 71, 75-76 (2d Cir. 2008)); *see* Opp. 44.

Finally, and most clearly of all, even assuming Plaintiffs plausibly plead that the University itself had knowledge of any conspiracy and its object—and they do not, *see* Br. 33—their claim fails independently because they do not allege the University "neglected or refused to exercise" any power it had to prevent such a conspiracy. *Urbina v. City of New York*, No. 14 Civ. 9870, 2016 WL 79991, at *4 (S.D.N.Y. Jan. 6, 2016), *aff'd*, 672 F. App'x 52 (2d Cir. 2016). Again, Columbia responded reasonably, though not perfectly, throughout the post-October 7 landscape—but its response was especially forceful in the context of the encampments, the sole basis for Plaintiffs' § 1986 claim. Plaintiffs concede that the University requested NYPD assistance to clear out the first encampment one day after it formed, so they rely on the fact that when a second encampment formed, the University pursued a more sustainable resolution before again requesting NYPD assistance. *See* Opp. 48. But Plaintiffs do not cite a single case to support their argument that these responses somehow amount to a refusal to exercise power under § 1986.

## III. The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' State-Law Claims, Which Fail in Any Event

Plaintiffs do not dispute that upon dismissing their federal claims, this Court should decline to exercise supplemental jurisdiction over their claims under state and local law. *See* Br. 34; Opp. 48-55. At any rate, Plaintiffs fail to show that they adequately allege any of their non-federal claims.

***State and local antidiscrimination law.*** Plaintiffs concede that their NYSHRL and NYCRL claims rise and fall with their unavailing Title VI claim, *see* Opp. 48-49, so these claims

should be dismissed for all the reasons set forth above, *see supra* Section I. In addition, under Section 8-107(4) of the NYCHRL, "the 'plaintiff still bears the burden of showing . . . a discriminatory motive.'" *Rothbein v. City of New York*, No. 18 Civ. 5106, 2019 WL 977878, at *9 (S.D.N.Y. Feb. 28, 2019) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)). Plaintiffs do not contest this point, *see* Opp. 49, yet they come nowhere close to alleging discriminatory intent on Columbia's part. *See supra* Section I; Br. 13-30. And Plaintiffs all but abandon defense of their NYCHRL Section 8-107(17) claim, failing to even mention the applicable standard, much less explain how they meet it. *See* Opp. 48-49; Br. 34-35. In all events, Plaintiffs neither cite a "specific [Columbia] policy" disproportionately harmful to Jewish and Israeli students, nor establish a "disparity" in outcome through their scattershot comparisons. *Murillo-Roman v. Pension Bds. – United Church of Christ*, 22 Civ. 8365, 2024 WL 246018, at *11 n.5 (S.D.N.Y. Jan. 23, 2024); *see* Br. 14, 34-35; *supra* Section I.B.

    *Contract.* Because New York courts "refuse[] to substitute their judgment for that of university officials," *Sirohi v. Lee*, 222 A.D.2d 222, 222 (1st Dep't 1995), student-plaintiffs alleging breaches of contract in this State must show that a university has promised them "certain specified services," *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 421 (S.D.N.Y. 2021) (cleaned up). Yet none of the policies cited in the FAC contain such a promise. *See* Br. 36-37. Pressed on this point, Plaintiffs "identify" just two examples involving Columbia policies, both of which are broadly worded non-discrimination statements. Opp. 50-51. But courts in this District have long held that such statements are not enforceable promises of "specified services." *Novio v. N.Y. Acad. of Art*, 317 F. Supp. 3d 803, 811 (S.D.N.Y. 2018); *see also, e.g.*, *Ward v. N.Y. Univ.*, No. 99 Civ. 8733, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998). Plaintiffs' lone citation to the contrary—an unpublished,

thinly-reasoned case, *see* Opp. 51 (citing *Peters v. Molloy Coll. of Rockville Centre*, No. 07 Civ. 2553, 2008 WL 2704920, at *7-8 (E.D.N.Y. July 8, 2008))—is unpersuasive. Plaintiffs also implicitly concede that no policy on which they rely promises "any specific outcome" to a complainant, *see* Br. 37; Opp. 50-52, a concession that separately forecloses their claim, *see Nungesser*, 244 F. Supp. 3d at 373-74. And Plaintiffs do not dispute that every policy they cite contains a specific disclaimer limiting the reach of any potential contractual obligation, which presents yet another insurmountable hurdle to stating a viable claim here. *See* Br. 37-38 & n.25.

 ***Implied covenant.*** Plaintiffs try to breathe life into their redundant implied covenant claim by concocting a distinction between the charge that Columbia failed to comply with its policies and Plaintiffs' theory (unsupported by the FAC, *see supra* Section I.B) that Columbia applied its policies inconsistently. Opp. 51-52; *see* ¶ 693. But because both theories center on Columbia's compliance with its policies, *see* ¶¶ 691, 693, this is a distinction without a difference. *See, e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015). Tellingly, Plaintiffs' implied covenant argument relies exclusively on the *Harvard* decision, *see* Opp. 51-52, which itself relied on a feature particular to Massachusetts contract law, *Harvard*, 2024 WL 3658793, at *9 (citing *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 715 (1st Cir. 2022)). Regardless, "[a] claim for violation of the covenant survives a motion to dismiss only if . . . the relief sought is not intrinsically tied to the damages that flow from the breach of contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022). Since Plaintiffs do not plead separate damages for breach of the implied covenant, *see* ¶ 695, their claim necessarily fails.

 ***GBL §§ 349, 350.*** Plaintiffs' GBL claims fare no better. Plaintiffs concede, *see* Opp. 52, that where courts have permitted GBL § 349 claims against universities to proceed, they have done so in the context of "fraudulent, misleading, and unsavory *advertising and marketing strategies*,"

*Bailey v. N.Y. L. Sch.*, No. 16 Civ. 4283, 2017 WL 835190, at *10 (S.D.N.Y. Mar. 1, 2017) (emphasis added); "disclosures . . . to prospective students" that were "part and parcel of defendant's efforts to sell its services," *Gomez-Jimenez v. N.Y. L. Sch.*, 103 A.D.3d 13, 14, 17 (1st Dep't 2012); or a "broad-based marketing scheme," *Doe v. Yeshiva Univ.*, 703 F. Supp. 3d 473, 501 (S.D.N.Y. 2023). But the FAC contains no nonconclusory allegations that the inward-facing policies on which Plaintiffs rely, *see* Br. 38-39, were part of Columbia's admissions or marketing strategies, let alone that they were "targeted to prospective students across the country," Opp. 52 n.49; *see* ¶¶ 698-702. Independently, "a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Despite Plaintiffs' conclusory insistence to the contrary, the policies and their disclaimers could leave no reasonable reader with the "overall impression" that Columbia would impose student discipline in the precise manner that Plaintiffs would have preferred. *See Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 180 (2021); Br. 39.

   ***Premises liability.*** Plaintiffs do not contest that their premises liability claim can proceed only as to instances of physical injury, as their cited authority—involving landowners' unreasonable failures to prevent gunshot wounds, broken ribs, and sexual assaults—makes clear. *See* Opp. 54-55. Yet Plaintiffs allege verbal threats and offensive physical contact, *see id.* at 54, which is distinct from the suffering of "physical harm," *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 519 (1980). The closest Plaintiffs come is with a pseudonymous Barnard student, Jane Roe, who alleges that she visited Barnard Health Care Center after an incident in which another student rammed into her body. ¶ 320. But the FAC does not allege any injury that Roe sustained, let alone explain how her injury was foreseeable to Columbia. *See* Br. 40. To the extent Plaintiffs claim that

Roe or any other Plaintiff satisfies the foreseeability requirement, they conflate foreseeability of *verbal* harassment with foreseeability of *physical* assaults. *See* Opp. 54-55.

Plaintiffs' claim independently fails because controlling precedent from New York's highest court holds that a university has no general duty to shield students from other students. *See* Br. 40. Plaintiffs cite one intermediate appellate case to the contrary, but even assuming that outlier case was correctly decided, its holding is expressly limited to "*ongoing and pervasive* criminal conduct" causing physical injury, which is not pleaded here. Opp. 54. Absent that limitation, universities could be liable in tort for all manner of on-campus assaults—decidedly not the law in this State. *E.g.*, *Eiseman v. State*, 70 N.Y.2d 175, 190 (1987).

**IV.    Plaintiffs' Suit Is Largely Nonjusticiable and Seeks Improper Relief**

Plaintiffs fail to establish that SAA and SCLJ have standing to seek any relief. They concede that SAA and SCLJ lack standing to seek damages, Opp. 67 n.67, and they demonstrate no greater entitlement to injunctive relief. Unlike in the bulk of cases cited by Plaintiffs, *see* Opp. 67-68, SAA and SCLJ do not seek to enjoin any particular Columbia policy or practice, such that an injunction would "inure to the benefit" of their members generally, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). And SAA and SCLJ's standing is doubly foreclosed for purposes of § 1986, which never permits associational standing. *See* Br. 41-42. Plaintiffs try to limit this rule to § 1983, *see* Opp. 70-71, but that contravenes long-standing Circuit law, *see, e.g.*, *Warth v. Seldin*, 495 F.2d 1187, 1194 (2d Cir. 1974) (associational standing "highly doubtful" in "most cases under the Civil Rights Act," including those under §§ 1981, 1982, and 1983), *aff'd*, 422 U.S. 490 (1975); *Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 508-09 (S.D.N.Y. 2022) ("[T]he Second Circuit has concluded that there is no associational standing under the Civil Rights Act . . . ."), *aff'd*, 96 F.4th 106 (2d Cir. 2024). Plaintiffs' district court cases are not to the contrary. In *Hall v. Warren*, the relevant plaintiff had standing to sue in its own right. *See* No. 21 Civ. 6296,

2022 WL 2356700, at *3-4 (W.D.N.Y. June 30, 2022). *Young America's Foundation v. Stenger* did not even address the issue. *See* No. 20 Civ. 822, 2023 WL 3559619, at *23-24 (N.D.N.Y. May 19, 2023). Accordingly, SAA and SCLJ should be dismissed from this suit no matter what.

The Individual Plaintiffs also fail to establish standing to seek injunctive relief. *See* Br. 4-10, 42-43. Plaintiffs' response boils down to inaccurately dismissing Columbia's efforts, *see* Opp. 61, and impermissibly conflating *past* injury with a likelihood of *future* harm, *see id.* at 59-60. But Plaintiffs "cannot rely on past injury to satisfy the [future] injury requirement," and absent satisfaction of this requirement, a court "lack[s] subject matter jurisdiction to entertain a request for [injunctive] relief." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004). Accordingly, the Individual Plaintiffs' claims should be narrowed to damages alone.

Finally, even if any Plaintiffs had standing to seek injunctive relief, they could not seek the breathtaking injunction demanded in the FAC. *See* Br. 43-45. Plaintiffs try to recast the unbounded nature of their requested relief as a virtue, Opp. 74-75, but they cite no authority that would permit this Court or a neutral monitor to "second-guess[]" potentially thousands of Columbia's disciplinary, employment, financial, and administrative decisions, *Davis*, 526 U.S. at 648. Effectively placing Columbia in judicial conservatorship may be Plaintiffs' goal. But that goal is untethered from the cautious, deferential principles articulated by the Supreme Court in *Davis* and underscores the unprecedented nature of Plaintiffs' case.

## CONCLUSION

For the foregoing reasons, the Court should grant Columbia's motion and dismiss the FAC with prejudice as against Columbia.[9]

---

[9] Plaintiffs argue that any dismissal should be without prejudice. *See* Opp. 75 n.73. But this is a deliberate indifference case, and Plaintiffs cannot plead new facts that would erase or negate Columbia's sustained responses to antisemitism and anti-Israeli sentiment that Plaintiffs already acknowledge in the FAC. Indeed, Judge Failla recently dismissed a university deliberate indifference case with prejudice in a similar posture. *See Sacks*, 2024 WL 402945, at *1.

Dated:   September 11, 2024                     By: _____
         New York, New York                         Roberta A. Kaplan
                                                     Timothy S. Martin
                                                     KAPLAN MARTIN LLP
                                                     156 West 56th Street, Suite 207
                                                     New York, NY 10019
                                                     (212) 316-9500
                                                     rkaplan@kaplanmartin.com
                                                     tmartin@kaplanmartin.com

                                                     Gabrielle E. Tenzer
                                                     Maximillian L. Feldman
                                                     Amit Jain
                                                     Zachary J. Piaker
                                                     Sabrina Alvarez-Correa
                                                     Rachel H. Simon
                                                     HECKER FINK LLP
                                                     350 Fifth Avenue, 63rd Floor
                                                     New York, NY 10118
                                                     (212) 763-0883
                                                     gtenzer@heckerfink.com
                                                     mfeldman@heckerfink.com
                                                     ajain@heckerfink.com
                                                     zpiaker@heckerfink.com
                                                     salvarezcorrea@heckerfink.com
                                                     rsimon@heckerfink.com

                                                     J. Patrick Hornbeck
                                                     HECKER FINK LLP
                                                     1050 K Street, NW, Suite 1040
                                                     Washington, D.C. 20001
                                                     (212) 763-0883
                                                     phornbeck@heckerfink.com

                                                     *Counsel for Defendant Trustees of
                                                     Columbia University in the City of
                                                     New York*