MARC A. GREENDORFER (STATE BAR NO. 2902195)
*Counsel of Record*
ZACHOR LEGAL INSTITUTE
P.O. Box 6774
Bozeman, Montana 59771
Marc@ZachorLegal.org
*Attorney for Amicus Curiae Zachor Legal Institute*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STUDENTS AGAINST ANTISEMITISM, INC., STANDWITHUS CENTER FOR LEGAL JUSTICE, MILES RUBIN, DANIELLA SYMONDS, ERIN MCNULTY, NOAH MILLER, VALERIE GERSTEIN, KATIANA ARYEH, LAURA BELLOWS, LEMONY DAVID, JOHN DOE, CHAYA DROZNIK, LEO ELKINS, SAMUEL FRIEDMAN, MAYA GAL, AYELET GLASER, MICHAEL GROSS, JARED HARNICK, GABRIEL KAHANE, TALIA KESSELMAN, ELI MIZRAHI-AKS, OMER NAUER, AMIEL NELSON, GABRIEL NELSON, MOLLY NELSON, MARC NOCK, AVA QUINN, TALIA RABBAN, JANE ROE, SOPHIE RUKEYSER, ALIZA RUTTENBERG, EMILY SANDLER, ANDREW STEIN, JONATHAN SWILL, RAFAEL VANUNO, XAVIER WESTERGAARD, EDEN YADEGAR, and LILY ZUCKERMAN, <br><br> *PLAINTIFFS,* <br><br> v. <br><br> THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, and TRUSTEES OF BARNARD COLLEGE, <br><br> *DEFENDANTS*. | Case No. 1:24-cv-01306 <br><br> The Honorable Vernon S. Broderick |

**BRIEF OF *AMICUS CURIAE* ZACHOR LEGAL INSTITUTE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Dated: December 27, 2024

# Table of Contents

1)    STATEMENT OF INTEREST OF *AMICUS CURIAE* ZACHOR LEGAL

INSTITUTE ...............................................................................................1

2)    ARGUMENT ....................................................................................1

A.    SUMMARY OF ARGUMENT...................................................................1

B.    IMPORTANCE OF THE CONGRESSIONAL REPORT .......................................3

C.    THE CONGRESSIONAL REPORT PROVIDES EVIDENCE OF DEFENDANTS'

DELIBERATE ACTS IN SUPPORT OF CAMPUS ANTISEMITISM. ...............................6

D.    THE CONGRESSIONAL REPORT DETAILS SPECIFIC INCIDENTS WHERE

DEFENDANTS' ACTS AND OMISSIONS ENABLED ANTISEMITIC ACTORS ................7

E.    THE CONGRESSIONAL REPORT DOCUMENTS DEFENDANTS' RECORD OF

REFUSING TO ADDRESS ANTISEMITIC INCIDENTS.................................................10

1)    THREATENING STATEMENTS AND OBSTRUCTION AT THE ENCAMPMENT...11

2)    HOSTING TERRORISM ADVOCATES ON CAMPUS...........................................11

3)    CONTEMPT FOR CONGRESSIONAL OVERSIGHT OF ANTISEMITISM .............14

F.    RECENT EVENTS DEMONSTRATE THE CONGRESSIONAL REPORT'S

RELEVANCE TO THIS CASE....................................................................................15

3)    CONCLUSION ..............................................................................18

## Table of Authorities

**Cases**

*Parizer v. AJP Educational Foundation Inc*. (No. 1:24-cv-00724) (E.D.

  Virginia)......................................................................................... 13

**Statutes**

18 U.S.C. § 2339B ............................................................... 12

18 U.S.C. §§ 241, 242 and 245 ............................................. 2

42 U.S.C. § 1986................................................... 9, 11, 13

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ............... 2, 5

**Other Authorities**

Anti-Defamation League, *The Alarming Surge of Antisemitism on College*

  *Campuses*, (Sept. 17, 2024)................................................ 2

COMM. ON EDUC. & THE WORKFORCE, U.S. HOUSE OF REP., REPUBLICAN STAFF

  REPORT: ANTISEMITISM ON COLLEGE CAMPUSES EXPOSED (Oct. 31 2024) . 2, 3,

  4, 5, 7, 8, 10, 11, 12, 14, 15, 18

Elad Vaida, *Columbia University justifies allowing anti-Israel prof who called*

  *Oct. 7 'astounding' to teach course on Zionism*, CAMPUS REFORM (Dec. 17,

  2024) ............................................................................... 17

Jessica Costescu, *He Sits on Columbia's Top Disciplinary Body. He Also Lauds Terrorist Plane Hijackings as 'Spectacular'*, WASH. FREE BEACON (Dec. 12, 2024) ................................................................................. 16

Letter from Representatives Ryan Zinke, Claudia Tenney, Chris Smith, Michael A. Rulli and Randy K. Weber to Attorney General Merrick B. Garland (July 24, 2024) ................................................................................. 2

Letter from Zachor Legal Institute and StandWithUs to Merrick Garland, Attorney General of the United States (July 17, 2024) ............................... 13

Letter from Zachor Legal Institute to Jeff Sessions, Attorney General of the United States (July 12, 2018) ......................................................... 13

Letter from Zachor Legal Institute to Merrick Garland, Attorney General of the United States (Oct.25, 2022) .................................................... 13

Letter to Judge Vernon S. Broderick from Marc E. Kasowitz, counsel for Plaintiffs dated Nov. 14, 2024, ECF No. 80 ...................................... 6

Matthew Sedacca and Chris Nesi, *Students at Columbia University launch anti-Israel 'Columbia Intifada' newspaper: 'Outrageous'*, NY POST (Dec. 6, 2024) ................................................................................. 16

Memorandum of Law in Support of Columbia's Motion to Dismiss, ECF No. 61 ................................................................................. 6

Motions to Dismiss (ECF Nos. 60 and 64) .......................... 3, 4, 5, 6, 11, 12, 18

NGO Monitor, *Samidoun Designated as a Terrorist Entity: Partners and Broader NGO Network* (Oct. 31, 2024)............................................................ 12

Peter Cordi, *California has most civil rights investigations against its schools since Oct. 7*, MSN.COM (June 8, 2024)............................................................ 2

Plaintiffs' First Amended Complaint (ECF No. 39)................................. 3, 5, 18

STAFF OF H. REP. REPORT ON ANTISEMITISM (Dec. 18, 2024) ............................ 5

Valerie Richardson, *Georgetown, Columbia, NYU faculty among most anti-Israel in U.S., according to new ranking*, WASH. TIMES (Dec. 11, 2024)...... 17

**1)    STATEMENT OF INTEREST OF *AMICUS CURIAE* ZACHOR LEGAL INSTITUTE**

*Amicus* is a non-profit civil rights legal organization combating antisemitism in the United States. *Amicus* is not only active in researching and publishing scholarship on statutory and constitutional law matters as they relate to antisemitism, it has responded to countless reports of antisemitism, especially in the wake of the Hamas terror attack on Israel on October 7, 2023 (the "October 7 Terror Attack") and has responded to numerous reports of antisemitism on K-12 as well as university campuses.[1]  While not all reports of campus antisemitism can be tracked to antisemitic pro-Palestinian Arab groups, the great majority of reports since October 7 are directly related to pro-Palestinian student activism such as that which is the subject of Plaintiffs' complaint. Jewish students and faculty are being harassed, intimidated, subjected to violence and even deprived of constitutional and federal rights at the hands of pro-Palestinian Arab activists.

The rights of individuals and groups to rely upon the protections of federal antidiscrimination laws at issue in this case in light of the horrific rise in antisemitism in the wake of the October 7 Terror Attack is at the heart of Zachor Legal Institute's interests.

**2)    ARGUMENT**

**A. SUMMARY OF ARGUMENT**

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amicus curiae* or its counsel made a monetary contribution to the preparation or submission of this brief.

In support of the October 7 Terror Attack, university students and outside agitators have ushered in a surge of violent antisemitism the likes of which have never before been seen in the United States.[2] Compounding the problem, universities have given cover to and abetted these attacks. As a result, the United States Department of Education has initiated over 100 investigations under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI") the majority of which involve antisemitic conduct on campuses in the wake of the October 7, 2023 Hamas terror attack[3] and members of Congress have joined with public calls for federal enforcement of civil rights laws to protect Jewish students.[4]

As part of governmental measures meant to determine the sources of these violent campus events, the House Committee on Education and the Workforce (the "Committee") investigated the alarming rise in antisemitism on university campuses, including at Defendants' campuses. In response to subpoenas, universities produced over 400,000 pages of documents, which the Committee reviewed and condensed into a report titled *Antisemitism on College Campuses Exposed* (the "Report")[5]. Its findings

---

[2] Anti-Defamation League, *The Alarming Surge of Antisemitism on College Campuses*, (Sept. 17, 2024), available at https://notoleranceforantisemitism.adl.org/resources/article/alarming-surge-antisemitism-college-campuses.

[3] Peter Cordi, *California has most civil rights investigations against its schools since Oct. 7*, MSN.COM (June 8, 2024), available at https://www.msn.com/en-us/news/us/california-has-most-civil-rights-investigations-against-its- schools-since-oct-7/ar-BB1nRilF.

[4] Letter from Representatives Ryan Zinke, Claudia Tenney, Chris Smith, Michael A. Rulli and Randy K. Weber to Attorney General Merrick B. Garland (July 24, 2024) (on file with *amicus*) (calling for the United States Department of Justice to prosecute those responsible for depriving Jewish students of their constitutional and federally protected rights under 18 U.S.C. §§ 241, 242 and 245).

[5] COMM. ON EDUC. & THE WORKFORCE, U.S. HOUSE OF REP., REPUBLICAN STAFF REPORT: ANTISEMITISM ON COLLEGE CAMPUSES EXPOSED (Oct. 31 2024), available at https://edworkforce.house.gov/uploadedfiles/10.30.24_committee_on_education_and_the_workforce_republican_staff_report_-_antisemitism_on_college_campuses_exposed.pdf

are directly relevant to this lawsuit and demonstrate that discovery is necessary to fully uncover Defendants' role in fostering a hostile environment for Jewish students and enabling the deprivation of rights of Jewish students on campus.

The following passage from the Report makes it clear why Defendants' Motions to Dismiss[6] (ECF Nos. 60 and 64) (together, "Motion to Dismiss") must be denied:

> *Campus life in the United States became a daily trial of intimidation and insult for Jewish students. A hostile environment that began with statements from pro-Palestinian student organizations justifying terrorism rapidly spiraled into death threats and physical attacks, leaving Jewish students alarmed and vulnerable. Unfortunately, too many colleges and universities failed to respond adequately to these incidents by protecting Jewish students*.[7]

## B. IMPORTANCE OF THE CONGRESSIONAL REPORT

As detailed in the Plaintiffs' First Amended Complaint (ECF No. 39) ("FAC") in this action, at the campuses of Defendants Columbia University and Barnard College (together, "Columbia/Barnard" or "Defendants"), Jewish and Israeli students and faculty have been subjected to hostile and violent antisemitic actions. Pro-Hamas events on campus have included assaulting, intimidating and physically blocking Jewish students and faculty from moving through campus spaces. Pro-Hamas mobs have been allowed to use Defendants' campuses to target Jewish students and faculty with calls for violence such as "Death to the Jews," and intimidating threats like "we

---

[6] While each Defendant has filed its own respective Motion to Dismiss and Memorandum of Law in Support of its Motion to Dismiss, the arguments in each are substantially similar. When the context requires, such as when this brief refers to passages from such filings, the citation to the specific filing will be made herein; otherwise, this brief will refer to the Motions to Dismiss and Memoranda of Law in the singular.

[7] Report at 5.

support liberation by any means necessary, including armed resistance" [8] and "violence is the only path forward," [9] have become commonplace across Defendants' campuses and in the surrounding areas.

Such incidents have deprived Jewish and Israeli students and faculty of the ability to fully participate in Defendants' educational and social opportunities, subjecting them to a pervasively hostile environment and depriving them of their constitutional and federally protected rights.

In its Motion to Dismiss, Defendants' acknowledge that antisemitism severely affected Jewish students and faculty at Columbia/Barnard in the wake of the October 7 Terror Attack but assert that they should not be legally culpable because Defendants' had to "…protect the safety of Columbia's diverse community, preserve educational opportunities for tens of thousands of students, maintain free academic inquiry, and comply with privacy and process requirements…" and its responses evinced "…reasonable judgement…."[10]

The Report, however, provides new and verified details on not only the extent of antisemitism at Columbia/Barnard but, most importantly for this case, the level of complicity of Columbia/Barnard's administrations that is at the heart of Plaintiffs' complaint.

The Report shows that contrary to Defendants' assertions in its Motion to Dismiss, its response was neither reasonable nor part of a balancing act to protect

---

[8] *Id*. at 62
[9] *Id.*
[10] Motion to Dismiss at 2-3.

various interests; rather, it was a deliberate set of actions meant to provide cover for and advance the goals of antisemitic actors on campus, wrapped in platitudes about remedial actions that are window dressing, at best.

The details in the Report directly relate to many of the FAC's alleged deficiencies Defendants have asserted in their Motion to Dismiss.

*Amicus* also notes that on December 18, 2024, the United States House of Representatives issued a separate report titled "United States House Of Representatives Staff Report on Antisemitism". This separate report was prepared in coordination with not only the Committee but also the Speaker of the House Mike Johnson, Majority Leader Steve Scalise, Majority Whip Tom Emmer, Republican Conference Chairwoman Elise Stefanik, Republican Conference Vice Chairman Blake Moore, the Energy and Commerce Committee, the Judiciary Committee, the Oversight Committee, the Veterans' Affairs Committee and the Ways and Means Committee and amplifies the contents of the Report with a special note that "Columbia stands out for its egregious failure to combat antisemitism on its campus, despite its president acknowledging that the University was in violation of its Title VI obligations."[11] Because the separate report's contents summarize the findings of the Report, the separate report will not be discussed herein beyond this reference.

---

[11] STAFF OF H. REP. REPORT ON ANTISEMITISM (Dec. 18, 2024) at 5, available at https://www.speaker.gov/wp-content/uploads/2024/12/House-Antisemitism-Report.pdf.

This *amicus* brief is being submitted to the Court to outline just some of the details in the Report that are directly relevant to the Court's upcoming decision on Defendants' Motion to Dismiss.

### C. THE CONGRESSIONAL REPORT PROVIDES EVIDENCE OF DEFENDANTS' DELIBERATE ACTS IN SUPPORT OF CAMPUS ANTISEMITISM.

The Report, submitted to this Court on November 14, 2024 via a letter from counsel for Plaintiffs,[12] became publicly available on October 31, 2024 (after the date of the FAC's filing) and provides previously unavailable support for the allegation that Defendants' unreasonable responses to various antisemitic incidents exacerbated the antisemitic violence and emboldened the perpetrators. Moreover, this new evidence also supports Plaintiffs' allegations that Defendants' actions and omissions were deliberate and in support of the deprivation of Plaintiffs' constitutional and federally protected rights by campus actors.

Defendant Columbia's Memorandum of Law in support of its Motion to Dismiss argues that its "[m]any disciplinary proceedings remain ongoing"[13] to address antisemitism on its campus. Defendants' purported proceedings are, however, similar to those undertaken at other universities and the Report demonstrates that they are best categorized as ineffectual window dressing meant to provide a façade of action.

---

[12] Letter to Judge Vernon S. Broderick from Marc E. Kasowitz, counsel for Plaintiffs dated Nov. 14, 2024, ECF No. 80.
[13] Memorandum of Law in Support of Columbia's Motion to Dismiss, ECF No. 61, at 9.

### D. THE CONGRESSIONAL REPORT DETAILS SPECIFIC INCIDENTS WHERE DEFENDANTS' ACTS AND OMISSIONS ENABLED ANTISEMITIC ACTORS

The Report provides a detailed analysis of Defendants' refusal to implement meaningful consequences in response to rampant and violent antisemitism on its campuses. As the Report states, "Columbia University was the site of some of the most disturbing and extreme antisemitic conduct violations in the country... However, documents and information produced by Columbia make clear that since October 7, 2023, Columbia has imposed shockingly few meaningful disciplinary consequences."[14]

The Report reveals that Defendants' leadership made extensive and inappropriate concessions to encampment organizers, far beyond what was publicly disclosed. These concessions emboldened antisemitic actors and indicate complicity.

One particularly egregious incident involved encampment organizers forming a human chain to physically obstruct Jewish students and faculty from exercising free movement on campus. According to the Report, a student shouted: "Attention everyone. Can I get everyone to form a human chain right here please? We have Zionists that have entered the camp."[15]

This blatant attempt to prevent Jewish students and faculty from accessing a portion of Defendants' campuses was emblematic of a sustained pattern of antisemitic discrimination and threatening conduct directed at Jewish individuals. Rather than

---

[14] Report at 59.
[15] *Id*. at 62.

enforcing meaningful disciplinary measures, Defendants' response was wholly inadequate. The student who led the incident received only a one-year suspension. Additionally, three other students who participated in the human chain were placed on disciplinary probation, a lenient punishment that failed to reflect the gravity of their actions.

The Report shows that Defendants' concessions went beyond mere leniency and included troubling proposals that incentivized further antisemitism. For example, rather than punish antisemitic actors for their unlawful and discriminatory conduct, Defendants' offered to reward them by offering to adopt discriminatory policies against Israel, such as divestment proposals and the establishment of a "resilience fund" for Gaza. Alarmingly, one of Defendants' potential concessions included a proposed joint program with Al-Quds University, an institution in the West Bank with documented Hamas-affiliated activities on campus. As the Report notes, "[b]y proffering these concessions, Columbia signaled that misconduct would not only be tolerated but rewarded."[16]

Despite the encampment's disruptive and criminal nature, Defendants' administration continued negotiations with encampment leaders, offering what the report describes as a "menu" of options to appease them.[17] These included disciplinary amnesty for many participants and a promise to explore implementing some of the encampment's demands even after negotiations failed. Then-President Minouche

---

[16] *Id.* at 18.
[17] *Id.* at 19.

Shafik's public statements following the failed negotiations reiterated some of these proposals and praised the protestors' efforts.

By failing to hold encampment organizers accountable and entertaining their demands, Defendants' effectively sanctioned antisemitism on campus. Moreover, by allowing campus actors to deny Jewish students and faculty access to campus and preventing Jewish students and faculty from exercising constitutional rights on campus, such as speaking and assembling Defendants clearly acted in concert with campus actors in violation of 42 U.S.C. § 1986 and the Report documents this fact.

The Hamilton Hall occupation, where antisemitic campus actors attacked, vandalized and occupied Hamilton Hall, an important campus building, starkly illustrates Defendants' capitulation to radical antisemitic elements and deliberate indifference to hostile acts targeting Jewish students and faculty.

On April 30, 2024, Columbia announced plans to expel the students who had criminally occupied Hamilton Hall. These individuals, alongside outside agitators, forcibly entered the building, shattered windows, barricaded doors, and obstructed entry with metal barricades, focusing on intimidating Jewish students and faculty and taking steps to deny them access to important campus facilities. The antisemitic gangs covered security cameras and unlawfully detained custodial staff, leading to at least one injury. A custodian later stated he would "never return to Hamilton Hall," citing trauma and fears for his safety. These acts were not only disruptive but also criminal.

However, Columbia quickly reversed course. Under pressure from radical faculty and antisemitic student leadership, Columbia transferred these disciplinary case for adjudication under the university Senate's "Rules of Conduct" process—a system widely known for its leniency and lack of enforcement. By June 2024, Columbia had dropped its expulsion plans, allowing 18 of the 22 arrested students to return to good standing, with seven permitted to graduate. Of the remaining four, only three were suspended, and one received probation.[18]

On the night of the Hamilton Hall occupation, 27 additional students were arrested at various locations on and off-campus. Defendants dismissed the disciplinary cases against these students, citing "insufficient evidence."[19] This decision effectively exonerated all 27 individuals, further reinforcing a culture of impunity for antisemitic actors on campus. The fact that Defendants concluded there was insufficient evidence is hardly dispositive; as the Report documents, Defendants have an institutional bias in favor of antisemitic activism.[20]

### E. THE CONGRESSIONAL REPORT DOCUMENTS DEFENDANTS' RECORD OF REFUSING TO ADDRESS ANTISEMITIC INCIDENTS

The Report documents Defendants' failures to properly address antisemitism on campus by allowing verbal threats, obstruction of rights on campuses and association with terrorism-supporting organizations.

---

[18] *Id.* at 88.
[19] *Id*, at 60.
[20] *Id.* at 21.

### 1) THREATENING STATEMENTS AND OBSTRUCTION AT THE ENCAMPMENT

One of the most egregious cases of the Defendants' refusal to properly address antisemitism on campus involved a Columbia student who, during a January 9, 2024, livestreamed disciplinary hearing, openly stated, "Zionists don't deserve to live." [21] The student, already under investigation for a social media post advocating violence, received only a brief probation for these explicit threats. On April 20, 2024, the same student escalated their behavior by organizing a human chain at the encampment to block Jewish students' movement, shouting, "Attention everyone. Can I get everyone to form a human chain right here please? We have Zionists that have entered the camp." [22] Despite the gravity of these actions, which constituted clear harassment and obstruction as well as the denial of constitutional and federally protected rights of Jewish students and faculty, Defendants imposed only a one-year suspension, allowing the harassment to continue with minimal repercussions.[23]

Again, the Report provides important information that indicates some level of coordination and support by Defendants for the claim of a violation of 42 U.S.C. § 1986 and, as such, the Report must be considered by this Court in relation to Defendants' Motion to Dismiss.

### 2) HOSTING TERRORISM ADVOCATES ON CAMPUS

---

[21] *Id*. at 60
[22] *Id*, at 61
[23] *Id*. at 60.

11

The Report also documents Defendants' pattern of leniency towards violent antisemitism, such as its allowance of the March 24, 2024, "Resistance 101" event. This event featured representatives from the Popular Front for the Liberation of Palestine ("PFLP"), a U.S.-designated foreign terrorist organization, and Samidoun, an affiliate of antisemitic campus groups,[24] which the U.S. Treasury has named as a Special Designated National subject to anti-terrorism sanctions due to its close affiliation with and control by the PFLP. The event's speakers praised the October 7 Terror Attack and openly encouraged support for groups like Hamas and Islamic Jihad. Despite the blatant endorsement of terrorism by the same student groups and individuals that persecuted Jewish students and faculty, Defendants imposed only conditional probation and warnings on the five student organizers, consequences grossly inadequate for the gravity of their actions.[25]

To the extent Defendants allege that they were powerless to do anything in response to the widespread campus support for the October 7 Terror Attack, as Defendant Columbia implies in its Motion to Dismiss at footnote 22, this argument is, at best, misguided. Existing federal laws, including 18 U.S.C. § 2339B, prohibit the provision of material support to designated foreign terror organizations.

---

[24] NGO Monitor, *Samidoun Designated as a Terrorist Entity: Partners and Broader NGO Network* (Oct. 31, 2024), available at https://ngo-monitor.org/reports/samidoun-designated-as-a-terrorist-entity-partners-and-broader-ngo-network/ ("[a]s NGO Monitor has demonstrated, in addition to its terror ties, Samidoun drives anti-Israel and antisemitic campaigns in the US and Canada – including on university campuses. Samidoun is a key member of broader anti-Israel networks of NGOs, activists, and funders – organizing and collaborating with other groups.")
[25] Report at 61.

While it's true that simply saying "I support Hamas" is not the provision of material support to terror, taking actions that are in support of the terrorist activities of Hamas or the PFLP, as antisemitic actors on Defendants' campuses did, are neither protected First Amendment rights nor lawful activism. Also inherent in Defendants' claims that it was trying to balance the rights of various constituencies on campus is the implication that the creation of a hostile environment, provision of support to terror and the spread of discrimination are somehow protected expressions.

There is a separate lawsuit in process documenting credible allegations that various anti-Israel campus groups provided material support to the terror organizations behind the October 23 Terror Attack[26] and *amicus* has documented similar allegations against campus groups in a number of prosecution requests to the United States Department of Justice, including one request that the Department of Justice enforce the criminal analogs to 42 U.S.C. § 1986 with regard to the deprivations of rights of Jewish students at Columbia/Barnard.[27]

---

[26] *Parizer v. AJP Educational Foundation Inc*. (No. 1:24-cv-00724) (E.D. Virginia).
[27] *See, e.g.,* Letter from Zachor Legal Institute to Jeff Sessions, Attorney General of the United States (July 12, 2018), available at https://zachorlegal.org/wp-content/uploads/2018/11/Final-DOJ-Letter.pdf?189db0&189db0; Letter from Zachor Legal Institute to Merrick Garland, Attorney General of the United States (Oct.25, 2022), available at https://zachorlegal.org/wp-content/uploads/2022/10/Final-DOJ-Letter-2022.pdf; and Letter from Zachor Legal Institute and StandWithUs to Merrick Garland, Attorney General of the United States (July 17, 2024), available at https://zachorlegal.org/wp-content/uploads/2024/07/Final-SWU-Zachor-Letter-to-DOJ-re.-Columbia.docx.

One would have to willingly suspend disbelief to accept that Defendants were not aware of the close working relationship between campus anti-Israel groups and terrorist organizations.

### 3) CONTEMPT FOR CONGRESSIONAL OVERSIGHT OF ANTISEMITISM

The Report includes communications from Defendants that reveal a dismissive attitude towards Congressional inquiries and an unwillingness to engage substantively with the legislative branch's work to prevent campus antisemitism.

In December 2024, Columbia Board of Trustees Co-Chair Claire Shipman referred to Congressional efforts to investigate antisemitism as "capital [sic] hill nonsense,"[28] reflecting a lack of respect for the serious issues raised by lawmakers. Shipman celebrated a New York Times article that portrayed Defendants in a favorable light compared to other universities facing scrutiny, stating that it "heavily inoculates us for a while"[29]

Further, Shipman's communications reveal troubling actions behind the scenes. While Defendants' publicly announced the suspension of certain student groups for violating university rules through antisemitic and pro-Hamas activities, Shipman proposed reinstating these groups and suggested collaborating with Rashid Khalidi, a faculty member known for his overt antisemitism and his history of inflammatory rhetoric. This contradictory approach highlights Defendants' lack of

---

[28] Report at 115.
[29] *Id.*

commitment to combating antisemitism and its deliberate pattern of defending antisemitic actors on campus.

The Report documents Defendants' demonstrated bias in its response to Congressional oversight. On January 4, 2025, then-President Minouche Shafik and Board Co-Chairs David Greenwald and Shipman discussed advice received from Senate Majority Leader Chuck Schumer, who suggested that the university's "political problems are really only among Republicans."[30] Following this advice, Defendants decided against meeting with Republican lawmakers, despite the bipartisan nature of concerns over campus antisemitism. Greenwald went so far as to suggest that Defendants should "keep [its] head down"[31] and avoid engaging with Republican members of Congress.

The Report also discusses an exchange in which Greenwald and former Board Chair Jonathan Lavine opined that a Democratic majority in the House of Representatives would end investigations into antisemitism at Defendants' campuses.[32]

Avoiding negative publicity, rather than protecting vulnerable students and faculty, has been Defendants' priority.

**F. RECENT EVENTS DEMONSTRATE THE CONGRESSIONAL REPORT'S RELEVANCE TO THIS CASE**

---

[30] *Id*. at 116.
[31] *Id.*
[32] *Id*. at 117.

The case of Columbia Professor Joseph Slaughter is illustrative in debunking Defendants' assertions that they are already taking strong action against rampant acts of antisemitism on campus: Professor Slaughter, who is still a member of Columbia's top disciplinary body, reportedly participated in the unlawful and discriminatory encampment and has praised terrorism.[33] And he sits on the committee that is currently drafting new policies governing protests on campus. This information goes directly to establishing the existence of a conspiracy between Defendants and the antisemitic campus actors.

Yet another example of Defendants' acts speaking louder than its pearl clutching public statements is the recent launch of a new publication by a notorious anti-Israel campus group that was already banned last year: the *Columbia Intifada*.[34] While news reports indicate that Defendants' disapprove of this publication, named after a series of violent terror attacks against Jews, the fact is that Defendants looked the other way as the hate screed, which uses Defendants' name without authorization and incites antisemitic violence, was distributed on campus.

Far from taking actions that would reasonably respond to rampant antisemitism on its campuses, Defendants recent actions include approving of a class

---

[33] Jessica Costescu, *He Sits on Columbia's Top Disciplinary Body. He Also Lauds Terrorist Plane Hijackings as 'Spectacular'*, WASH. FREE BEACON (Dec. 12, 2024), available at https://freebeacon.com/campus/he-sits-on-columbias-top-disciplinary-body-he-also-lauds-terrorist-plane-hijackings-as-spectacular/.

[34] Matthew Sedacca and Chris Nesi, *Students at Columbia University launch anti-Israel 'Columbia Intifada' newspaper: 'Outrageous'*, NY POST (Dec. 6, 2024), available at https://nypost.com/2024/12/06/us-news/students-at-columbia-university-launch-anti-israel-columbia-intifada-newspaper-outrageous/.

on Zionism that will be taught by a professor who is known for his antisemitism and support of the October 7 Terror Attack. As a result of this decision, a Jewish professor resigned, stating that Defendants' decision to appoint an antisemite for a class about Israel and the Jewish connection to the land is "akin to having a White nationalist teach about the US Civil Rights movement and the struggle for Black equality."[35]

Antisemitism among the Defendants' faculty and leadership is hardly an isolated issue; Defendants' faculty were recently named "among the most anti-Israel in U.S." in a report by a watchdog organization, which noted that "anti-Zionist faculty played an astonishing role this past year in escalating antisemitic incidents, fomenting chaos, spreading anti-Israel propaganda, and pushing anti-Israel activities."[36]

While antisemitism is the most visible sign of how rooted extremism is on Defendants' campuses, the same groups that are behind the surge in antisemitism have also admitted that they seek the "total eradication of Western civilization."[37]

---

[35] Elad Vaida, *Columbia University justifies allowing anti-Israel prof who called Oct. 7 'astounding' to teach course on Zionism*, CAMPUS REFORM (Dec. 17, 2024), available at https://www.campusreform.org/article/columbia-university-justifies-allowing-anti-israel-prof-called-oct-7-astounding-teach-course-zionism-/27123.

[36] Valerie Richardson*, Georgetown, Columbia, NYU faculty among most anti-Israel in U.S., according to new ranking*, WASH. TIMES (Dec. 11, 2024), available at https://www.washingtontimes.com/news/2024/dec/11/georgetown-columbia-nyu-faculty-among-anti-israel-/.

[37] Matthew Sedacca, *Columbia University's radical anti-Israel group seeks 'total eradication of Western civilization'*, NY POST (Aug. 17, 2024), available at https://nypost.com/2024/08/17/us-news/columbia-universitys-anti-israel-group-seeking-total-eradication-of-western-civilization/.

The Report shows that these recent events are part of the institutional antisemitic culture of Defendants.

**3)  CONCLUSION**

As noted in the FAC and in the Report, Defendants subject their Jewish students and faculty to a pervasively hostile educational environment where hostile actors are allowed to deprive Jews of constitutional and federally protected rights. If Federal civil rights laws provide any meaningful protection at all, such a "response" to rampant antisemitic hostility and discrimination cannot be countenanced as "reasonable under the circumstances."

Time after time, the Report documents how Defendants responded to antisemitism with the minimum action possible to be able to claim that they are addressing the issue as they allowed repeat offenses, dropped charges and permitted those responsible for incitement to return to campus without consequence. The Report shows that Defendants' claims that they are working to address antisemitism constitute a classic example of a fox guarding a chicken coop.

As Defendants properly note in their Motion to Dismiss, Plaintiffs must show, *inter alia*, the existence of a conspiracy with a purpose of depriving the victims of certain rights, such as the right to participate in campus affairs or to assemble peacefully, and Defendants' knowledge of such conspiracy. The Report contains facts that support these allegations. *Amicus* urges this Court to consider the Report in its entirety alongside the allegations in the FAC and deny Defendants' Motion to Dismiss.

18

DATED, this 27th day of December, 2024

By: /s/ Marc A. Greendorfer

Marc A. Greendorfer
*Counsel of Record for Amicus Curiae*
Zachor Legal Institute
State Bar No. 2902195

19

# CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

By: /s/ Marc A. Greendorfer

Marc A. Greendorfer
*Counsel of Record for Amicus Curiae*
Zachor Legal Institute
State Bar No. 2902195

DATED, this 27th day of December, 2024.