# **EXHIBIT A**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LOUIS D. BRANDEIS CENTER, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., <br><br> Defendants. | Case No. 23-cv-06133-JD <br><br> **ORDER RE DISMISSAL** |

Plaintiff organizations the Louis B. Brandeis Center, Inc. and Jewish Americans for Fairness in Education (together, Brandeis) sued The University of California, Berkeley, the Regents of the University of California, Berkeley Law School, and several individuals at the University of California in their official capacities (collectively, Berkeley). Early in the case, the Court granted Brandeis leave to amend its original complaint. Dkt. No. 53. The first amended complaint alleges that Berkeley has discriminated against Jewish students and faculty on its campus. *See generally* Dkt. No. 62 (FAC). Berkeley asks to dismiss the amended complaint, Dkt. No. 68, and Brandeis timely opposed, Dkt. No. 69. The parties' familiarity with the record is assumed. Dismissal is granted in part.

## LEGAL STANDARDS

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the plaintiff generally gets the benefit of the doubt, the Court will not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted). "The plausibility analysis is 'context-specific' and not

only invites, but 'requires the reviewing court to draw on its judicial experience and common sense.'" *Cannara v. Nemeth*, 467 F. Supp. 3d 877, 882 (N.D. Cal. 2020) (citation omitted).

## DISCUSSION

The FAC alleges a series of events unfolding over the course of several months on campus, which are said to have been precipitated by a campus culture hostile to Jewish students and professors. *See* FAC ¶¶ 3-7, 9-15, 18-19, 69-83, 93-117, 119-37. The FAC says that these events were perpetrated by students who professed to oppose Zionism, but actually intended to discriminate against Jewish students and professors because they are Jewish. *See id.* ¶¶ 9-10, 13-14, 95. The FAC also alleges that Berkeley failed or refused to enforce its anti-discrimination policies as to its Jewish students and faculty in response to these events. *See id.* ¶¶ 68, 142-45, 150, 153. Taken as a whole, the FAC plausibly alleges disparate treatment with discriminatory intent and policy enforcement that is "not generally applicable." *See Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022); *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022). The FAC also plausibly alleges that Berkeley was deliberately indifferent to the on-campus harassment and hostile environment. *See Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998). Consequently, Brandeis's claims under 42 U.S.C. § 1983 for violations of the Equal Protection and Free Exercise Clauses of the U.S. Constitution will go forward, as will the Title VI claim.[1]

It bears mention that the FAC repeatedly alleges that "Zionism is a central tenet of the Jewish faith." FAC ¶¶ 8, 15, 127-28, 170-72. This raises concerns about whether Brandeis intends to call upon the Court to determine the articles of faith of Judaism. If so, a serious constitutional problem would arise. The Establishment Clause properly forbids the federal courts from saying what the tenets of a religion are. *See, e.g.*, *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 737 (2020) ("The First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of . . . faith and doctrine.'" (citation

---

[1] Berkeley does not challenge, so the Court does not address, the sufficiency of the allegations as to any particular individual defendant.

omitted)); *Lee v. Weisman*, 505 U.S. 577, 599 (1992) (Blackmun, J., concurring) ("Government may [not] . . . obtrude itself in the internal affairs of any religious institution."); *Sch. Dist. of Abington Tp., Pa. v. Schmepp*, 374 U.S. 203, 243 (1963) (Brennan, J., concurring) ("[T]o give effect to the First Amendment's purpose of requiring on the part of all organs of government a strict neutrality toward theological questions, courts should not undertake to decide such questions."); *see also Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N.A.*, 344 U.S. 94, 114-17 (1952); *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244, 1248 (9th Cir. 1999). This proscription is particularly forceful when, as here, there is genuine disagreement on the matter. *See* FAC ¶¶ 14, 118-19. Because the FAC as a whole plausibly alleges that Jewish students and professors were disparately treated because they are Jewish, the Court need not get into the issue now. The "Establishment Clause will be no worse for not having been so tested." *Satanic Temple, Inc. v. City of Boston*, 111 F.4th 156, 185 (1st Cir. 2024) (Barron, J., concurring). It may be that the Court may properly determine whether Zionism is a sincerely held religious belief for some individuals, as circumstances might warrant, but the Court will not determine if it is a central tenet of Judaism.

The 42 U.S.C. § 1981 claim is dismissed. The gist of this claim is that members of the plaintiff organizations who are legal academics cannot contract with certain Berkeley student organizations that adopted a bylaw barring invitations to individuals espousing Zionist beliefs. FAC ¶ 179. Brandeis does not dispute it must show standing to challenge the bylaw in connection with the Section 1981 claim. *See* Dkt. No. 69 at 6:10-12. The complaint does not allege that any academic member has sought to contract with the organizations since adoption of the bylaw, been turned away on account of the bylaw, or has otherwise been put at a contractual disadvantage by the bylaw. *See* FAC ¶¶ 34-49. The conclusory allegation that the academics "would welcome the opportunity to speak," *id.* ¶¶ 34-35, 37-49, is not enough. *See Carney v. Adams*, 592 U.S. 53, 63-66 (2020).[2]

---

[2] Allegations that two academic members spoke to unnamed Berkeley student groups in the past does not plausibly allege an injury in fact, FAC ¶ 41, 44, because there is not a non-speculative basis for reasonably inferring those unnamed groups adopted the bylaw or the members would speak or attempt to speak at such groups in the future. *See Carney*, 592 U.S. at 65.

Brandeis mentions "competitor" standing, *see* Dkt. No. 69 at 6, but does not say how that theory is at all applicable here. The allegations in the FAC strongly suggest it is not relevant. *See Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020) ("The key is that the injury is the increase in competition rather than the ultimate denial of an application."). Brandeis also does not point to any allegations in the FAC that might link the bylaw to a generalized dignitary harm to an academic member, or explain how *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853 (9th Cir. 2017), is relevant to the issues in this case. *See Nat'l Fam. Farm Coalition v. Vilsack*, --- F. Supp. 3d ---, 2024 WL 4951257, at *15 (N.D. Cal. Dec. 2, 2024) ("The Court does not review party's motion papers and offer coaching pointers for a second round of briefs." (citation omitted)). Consequently, neither plaintiff organization has associational standing to bring the Section 1981 claim. *See Hunt v. Wash. State Apple Advert. Com'n*, 432 U.S. 333, 343 (1977) (requirements for associational standing).

Dismissal of the Section 1981 claim is with prejudice. The claim was in the original complaint. Dkt. No. 1 ¶¶ 120-25. In a prior motion to dismiss, Berkeley squarely challenged the sufficiency of the allegations about the academic members' asserted injury and cited *Carney*. Dkt. No. 44. At the hearing on the motion to dismiss, the Court discussed the issue and permitted Brandeis to amend the complaint on that ground. *See* Dkt. No. 56 at 5:16-9:1, 10:4-9, 11:11-12:4. "The Court's discretion to dismiss with prejudice is 'particularly broad' after prior leave to amend has been granted." *Won v. Fed. Nat'l Mortg. Ass'n*, No. 16-cv-01337-JD, 2016 WL 6822068, at *2 (N.D. Cal. Nov. 18, 2016) (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)). Because Brandeis had "ample notice" of the particular deficiency with respect to this claim and did not cure it after prior leave to amend, "[a]nother bite at the apple is not warranted on this record." *Cao v. Bank of Am., N.A.*, No. 24-cv-01195-JD, 2025 WL 660248, at *4 (N.D. Cal. Feb. 28, 2025).

The claim under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, is dismissed. As Brandeis acknowledges, Dkt. No. 69 at 15:11-12, the complaint must allege that an exclusion from participation or denial of benefits "was by reason of [the individual's] disability." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014); *see* 42 U.S.C.

4

§ 12132. Brandeis did not identify any allegations in the FAC to the effect that Berkeley "discriminated against [a plaintiff] by reason of his disability." *Cohen*, 754 F.3d at 700; *see also Nat'l Fam. Farm Coalition*, --- F. Supp. 3d ---, 2024 WL 4951257, at *15 ("The burden is on the party to make its case in the first instance, as it sees fit." (citation omitted)). The likelihood that Brandeis can successfully amend the ADA claim seems low. Even so, because the claim was raised for the first time in the FAC, leave to amend is granted

A few loose ends warrant discussion. Berkeley says that the claims under Sections 1981 and 1983 should be dismissed with prejudice as to the Regents of the University of California because it is not a "person" within the meaning of those statutes. Dkt. No. 68 at 15 n.2. Brandeis did not respond, and the point is well taken. Brandeis also did not oppose Berkeley's contention that all claims should be dismissed as to the University of California-Berkeley and Berkeley Law School on the ground that they are not legally distinct entities from the Regents. *Id.* All claims as to those defendants, too, are dismissed with prejudice. The request for judicial notice, Dkt. No. 68-2, is denied as moot, as the complaint links to, and so incorporates, the relevant document. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018).

## CONCLUSION

Counts I, II, and III are dismissed with prejudice as to the Regents of the University of California. All counts are dismissed with prejudice as to the University of California-Berkeley and Berkeley Law School. For the remaining defendants, Count III is dismissed with prejudice, and Count V is dismissed with leave to amend. Brandeis may file an amended complaint consistent with this order by April 18, 2025. No new parties or claims may be added without the Court's prior consent. Failure to meet the filing deadline will result in dismissal of the amended claims pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: March 31, 2025

JAMES DONATO
United States District Judge

5